UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:15-cv-00010-FDW

| TERRI LEE JENKINS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 14) and "Memorandum in Support…" (Doc. No. 15); Defendant Commissioner's Motion for Summary Judgment (Doc. No. 16) and "Memorandum in Support…" (Doc. No. 17); and Plaintiff's "Reply to Response" (Doc. No. 18). The Parties initially filed motions for summary judgment and this Court *sua sponte* directed supplemental briefing in light of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).[1] The Court also considered Plaintiff's "Supplemental Memorandum" (Doc. No. 22); Defendant's Second Motion for Summary Judgment," (Doc. No. 23), and "Memorandum in Support," (Doc. No. 24); and Plaintiff's "Reply to Response" (Doc. No. 25).

Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set for below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

---

[1] The mandate was issued on May 11, 2015, after Plaintiff's complaint was filed.

1

## I. BACKGROUND

On September 16, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits. Plaintiff alleged disability starting on September 7, 2010. On September 27, 2013, after a hearing before the Administrative Law Judge (ALJ), Plaintiff's claim was denied. On November 25, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ decision which alleged only "[t]he decision was based on legal error." (A.R. at 7).[2] Subsequently, Plaintiff filed the pending action.

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). District courts do not review a final decision of the Secretary *de*

---

[2] The Administrative Record ("A.R.") was filed April 24, 2015. (Doc. No. 13) Citations to the opinion of the ALJ refer to attachment 3 to Document 13. (Doc. No. 13-3).

*novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456. Thus, if this Court finds that the Commissioner applied the correct legal standards and that the decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

Thus, the issue before this Court is whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act.[3] Plaintiff has the burden of proving he was disabled within the meaning of the Act in order to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be

---

[3] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et. seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering his or her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering his or her RFC and vocational factors, a claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203. If a claimant is able to carry this burden through the fourth step, the burden shifts to the Commissioner in the fifth step to show that other work is available in the national economy that the claimant could perform. Id.

In this case, on September 16, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning September 7, 2010. The claim was initially denied on January 1, 2012, and upon reconsideration on March 3, 2012. Thereafter, Plaintiff filed a written request for a hearing on March 22, 2012 (20 CFR 404.929 *et seq.*). The Plaintiff, represented by counsel, appeared and testified at a hearing held on July 23, 2013. An impartial vocational expert also appeared at the hearing. On September 27, 2013, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since the alleged

onset date of September 7, 2010. (A.R. 13).

At step two, the ALJ determined that Plaintiff had severe impairments of "arthralgia, depression, anxiety, and emphysema (20 CFR 404.152(c))." Id. At step three, the ALJ found that Plaintiff's condition did not meet any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 13). Specifically, the ALJ found:

> In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has moderate difficulties. **With regard to concentration, persistence or pace, the claimant has moderate difficulties.** As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(A.R. 13-14) (emphasis added). The ALJ further made the following findings which is reflective of the thoroughness of the evaluation of the Plaintiff's claim: "[t]he undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (A.R. 14).

The ALJ noted: "the evidence of record demonstrates that she suffers from a disturbance of mood accompanied by full or partial depressive syndrome." Id. Other relevant portions of the ALJ's hearing decision reflect:

> In a Medical Questionnaire dated September 10, 2012, Dr. Stephen McIntyre states the claimant's depressive syndrome is characterized by 9 of 9 symptoms… Exhibit 20F.
>
> The **medical evidence of record** shows that the claimant had a one intake assessment on February 7, 2013 and was diagnosed with Major Depressive Disorder with psychotic features, post traumatic stress disorder, and personality disorder….The remain[der] of the exam was within normal limits. **The claimant reported that she occasionally smoked marijuana and that she was taking**

5

> **Klonipin prescribed by her treating physician….She was instructed to follow up with Cognitive Connection for an evaluation**. Exhibit 12F. **There are no additional mental health records.**

(A.R. 14) (emphasis added)(referring to Exhibit 20F located at A.R. 770-772 and Exhibit 12F located at A.R. 690-711). The ALJ also addressed the claimant's assertions against the medical evidence presented, specifically:

> The **claimant reported that she had a psychiatric hospitalization** from January 29 through February 2, 2104, for depression and suicidal ideation. **However, no records of this hospitalization were in the record.** Exhibit 12F.

(A.R. 14) (emphasis added). In addressing the materials and the medical opinion of Plaintiff's physician, the ALJ made the following determination:

> Dr. McIntyre's opinion at [Exhibit] 20F is **neither internally consistent nor consistent with the other evidence.** The 'extreme' impairment at [Exhibit] 20F3 is not supported by earlier indicators on the questionnaire. Indeed, the list shows that she [has] a list of symptoms, but **no discussion of the degree of ailment**. There are **many functions which, show no impairment at all**. Furthermore, Dr. McIntyre is a family practitioner, he is not a mental health doctor. The claimant was assessed to begin mental health treatment in February 2013. Exhibit 12F. She did not mention to Dr. McIntyre that she was seeing a psychiatrist at the April and July 2013 office visits, and **no records of ongoing treatment were produced**.

(A.R. 14-15)(emphasis added).

The ALJ clearly stated the basis for the weighing of Dr. McIntyre's opinion: "[t]he undersigned has **not given 'controlling' weight to Dr. McIntyre's opinions** of extreme limitations from mental impairments **because it is not 'well supported by medically acceptable clinical and laboratory diagnostic techniques'** and is **'inconsistent with other substantial evidence** in the case record.' (See also 20 CFR 404.1527). (A.R. 15) (emphasis added).

The ALJ additionally clarified that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Id. The ALJ proceeded to conduct a more detailed and itemized assessment.

At step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). (A.R. 15). Plaintiff's possible work is limited to duties:

> …**except** simple, routine, repetitive tasks, no contact with public; occasional contact with supervisors and coworkers; frequent but not constant handling and fingering with left, nondominant hand; no climbing ladders, ropes, and scaffold; occasionally climb ramps and stairs; and needs a cane to ambulate but not to perform the functions of a job.

(A.R. 15)(emphasis added). In making this finding, the ALJ "considered **all symptoms** and the **extent** to which these symptoms can **reasonably be accepted** as **consistent with the objective medical evidence** and other evidence…[and] has also considered **opinion evidence** in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (A.R. 15)(emphasis added). The ALJ noted that in considering the claimant's symptoms a two-step process must be followed. First, determine whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable techniques and that can reasonably be expected to produce the claimant's pain or other symptoms. Id. The ALJ also noted that "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (A.R. 15). The ALJ thereafter extensively chronicled Plaintiff's medical history, including records and opinions, her daily activities, her medications and combinations of medications, and the extent to which she took them, her ability

to concentrate and read books, handle money, go shopping, handle financial transactions, and pay attention for 1-2 hours. (A.R. 15-20). The ALJ noted that on October 22, 2011, Plaintiff underwent a psychological consultative evaluation where she stated that she is able to do light housework, likes to read, cooks, mops, makes the beds, dust, sweeps, completes laundry, pulls weeds, works in her garden, does light shopping with her husband, gets dressed most days and is able to bathe and dress without assistance, is able to drive and manage money. (A.R. 18). Further information from the evaluation shows that she alleged concentration and attention problems, but had no history of mental health treatment or psychiatric hospitalizations. Also, she was cooperative and attentive but had a depressed mood. Id. Additionally, the evaluation reflects that:

> [o]n the mental status examination, she was oriented, recall intact, mild deficits in concentration, mental flexibility intact, average intellectual ability, with well-developed language skills and abstract reasoning. Her immediate and delayed memory was intact.

(A.R. 18).

The ALJ stated that Plaintiff was unable to perform any past relevant work under 20 CFR 404.1565. (A.R. 20). The ALJ also found that Plaintiff was a younger individual based on 20 C.F.R. 404.1563, had at least a high school education, and had the ability to communicate in English. Id. Here, the ALJ found that transferability of Plaintiff's job skills is not an issue because the ALJ found Plaintiff's past relevant work is unskilled. (A.R. 21).

At step five, the ALJ, based on testimony of the vocational expert ("VE"), concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform" such as cleaning, housekeeping, mail clerk (not in post office), nut/bolt assembler. (A.R. 21).

On appeal to this Court, Plaintiff presents the following assignments of error:

(1) the ALJ's mental residual functional capacity finding fails to account for the concentration, persistence and pace limitations that he himself found, which were also found by the medical experts in this case. Tr. 15.

(2) the ALJ failed to assign weight to and properly analyze the opinions of the Agency's examining and non-examining mental health experts, Drs. Newton and Herrera. Tr. 20; 651-54; 92-97.

(3) the ALJ failed to analyze the opinion of Plaintiff's long-time treating physician, Dr. McIntyre, consistent with Agency policy and Fourth Circuit precedent. Tr. 14-15; 754-56.

(4) the ALJ erred by failing to consider Plaintiff's stellar work history in his credibility finding. Tr. 19-20.

(5) the ALJ failed to rule on Plaintiff's post-hearing objections to the vocational expert's testimony and the denial of a full and fair hearing. Tr. 251-54.

(Doc. No. 15, 2-3).

### A. Assessment of the Effects of Plaintiff's Ability to Stay on Task

When the ALJ finds moderate limitation in concentration, persistence, or pace they must properly consider these limitations in the RFC. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). These limitations are not accounted for by restricting the Plaintiff to "simple, routine tasks or unskilled work." Id. While an ALJ can exclude concentration, persistence, or pace from hypothetical questions asked to the vocational expert, the ALJ must properly explain why a moderate limitation in these areas does not translate into a limitation in the claimant's RFC. Id.

Here the ALJ did limit Plaintiff, but with the further limitation to jobs "**except** simple, routine, repetitive tasks" as a result of his difficulties concentrating. (A.R. 21)(emphasis added).

As was noted above, these limitations alone are not enough to account for moderate limitation in concentration, persistence, or pace. Id. However, the ALJ provided substantial evidence from the medical records and statements of the Plaintiff to indicate that these moderate limitations did not translate into limitation in the claimant's RFC.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780 F.3d at 638. However, the Mascio court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in concentration, persistence, or pace would not require the RFC to include specific restrictions related to the ability to stay on task. Id.

Here, the ALJ sufficiently explained why a restriction to jobs except simple, routine, repetitive tasks, adequately accounted for Plaintiff's moderate mental limitation. Although the ALJ assessed moderate limitation in that area of functioning, the ALJ also discussed Plaintiff's daily activities, which showed that Plaintiff retained some ability to sustain concentration and have social interaction.

The ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (A.R. 26). However, the ALJ also noted that Plaintiff had no psychiatric hospitalizations and there were multiple reports of her conditions being either level or controlled with medication including the examples from Plaintiff's daily activities. The ALJ recognized that Plaintiff reported difficulty with physical activities, but her physician

noted this was a mild limitation, "her lungs were clear, and she continued to smoke against medical advice." (A.R. 20).

The ALJ also noted that "[o]verall evidence in the file shows that claimant does have impairments that could reasonably be expected to produce associated symptoms and functional limitations, however, not to the extent alleged." (A.R. 21). The ALJ determined, "[t]he severity is not consistent with objective medical findings." Id. Further, "[s]he drives independently, manages finances, cooks, mops, and pulls weeds. She reads often, about a "dozen books in a good month." (A.R. 20)(internal citations omitted).

Moreover, in determining Plaintiff's mental RFC, the ALJ relied, in part, on the opinions of the state agency psychological consultants, stating: "I agree with the state agency that her severe mental impairments cause some limitations in her functioning. However, the medical evidence of record does not document any listing level of impairment and none that would preclude her from all work." (A.R. 20). Further, "[t]he totality of the medical evidence…indicates that the claimant has the mental capacity to perform simple, routine, tasks in a stable, low-stress work setting with minimal interpersonal demands." Id. The ALJ then also makes a departure from the State agency in favor of the Plaintiff, noting: "[t]he State agency found that claimant could perform 'medium' work. I find the claimant more physically limited, had have limited her to less than the full range of light work." Id. Thus, the ALJ determined that the mental impairments did not place any limits on concentration, persistence, or pace, yet, the physical limitations resulted in excluding "simple, routine, repetitive tasks." Finally, the ALJ properly made a credibility determination in finding "the claimant has overstated her functional limitations as compared to the medical evidence of record. I have given significant weight to the findings of the consultative examiners." Id.

11

The Court will not reweigh evidence presented to the ALJ, but will only determine whether the ALJ used substantial evidence to adequately support their decision. Lester, 683 F.2d at 841. Here, the Court finds that the evidence cited above constitutes substantial evidence to support the ALJ's decision not to include impairments in concentration, persistence, or pace in the RFC limitations.

Accordingly, the ALJ's decision sufficiently shows that she considered Plaintiff's ability to "stay on task," which the Mascio court distinguished from the ability to perform simple tasks, see Mascio, 780 F.3d at 638, and created "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the record evidence and her conclusion that Plaintiff can perform jobs, except simple routine, repetitive tasks, notwithstanding moderate limitation in concentration, persistence or pace. As a result, the Court is not left to guess at the ALJ's decision-making process.

In conclusion, Plaintiff's first, second, and third assignments of error fail to warrant relief.

### B. Treating Physician's Opinion

Generally, the ALJ gives controlling weight to the treating physician's opinion. 20 C.F.R. § 416.927(c)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting that Craig had been superseded by 20 C.F.R. § 416.927(c)(2), but recognizing that this interpretation of when a physician's opinion should not be given controlling weight is consistent with the statute). The weight accorded to a physician's opinion is based on its consistency with evidence in the record. 20 C.F.R. § 416.927(c)(4). However, if the treating physician's opinion

is not given controlling weight, then the ALJ must provide good reason for not doing so. 20 C.F.R. § 416.927(c)(2).

Here, the ALJ gave little weight to the treating physician's opinion because she determined "that Dr. McIntyre's opinion at [Exhibit] 20F is **neither internally consistent nor consistent with the other evidence**." (A.R. 14). The ALJ also considered mental health notes, treatment notes and objective observations, and Plaintiff's own recitation of activities and functioning that were in conflict with the more restrictive limitations proposed in Dr. McIntyre's opinion. (A.R. 15-20). Thus, the Court finds that the ALJ's decision to give Dr. McIntyre's more restrictive opinion little weight is supported by substantial evidence. Id.

The ALJ also attributed significant weight to State agency psychological consultants (AR 20). The Social Security regulations recognize, "State agency medical and psychological consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." These regulations go on to state, "[t]herefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." Id. The clear language of the regulations allows an ALJ to attribute weight to a State agency psychological consultant.

In this instance the ALJ attributes weight to the State agency psychological consultants for the proper reason that their opinions are more aligned with the objective medical evidence. Id. The evidence to support this decision was the treating physician's objective treatment notes and other objective findings (such as Plaintiff's daily activities). (AR 15-20). The Court finds that

this evidence, presented in the ALJ's decision, substantially supports her decision to give significant weight to the State agency psychological consultants.

For these reasons the Court finds that there is substantial evidence to support giving little weight to the treating physician's opinion while giving significant weight to the State agency psychological consultants' opinions.

**C. Credibility Determination**

As was previously noted in the Court's decision, in reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig</u>, 76 F.3d at 589. The ALJ, not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. <u>Hays</u>, 907 F.2d at 1456. The ALJ is thus able to make credibility determinations so long as they are supported by substantial evidence.

The ALJ did not find Plaintiff's testimony concerning the extent of her limitations credible because they were inconsistent with the record. (A.R. 20). In making this determination the ALJ first considered the psychological evidence previously stated in this opinion, as well as Plaintiff's ability to drive, handle money, interact with family, care for her household, the treatment medication received by Plaintiff. The Court finds that the evidence provided in the treatment record and the inconsistencies between Plaintiff's testimony and the objective record constitute substantial evidence to find Plaintiff's testimony concerning the extent of his limitations not credible.

Plaintiff also contends that Plaintiff's work history was not properly considered. However, the ALJ noted the Plaintiff's work history throughout the examination, including in the past relevant work history. Yet, the ALJ also properly noted that on December 3, 2010, Plaintiff's

physician "stressed that she needed to get back to the activities of daily living as soon as possible." (A.R. 17). Yet, in January 2011, when the Plaintiff "was scheduled to return to work; however, she requested a note stating that she could perform the bus driver job but not the cafeteria job. Id. She was told to stop smoking completely because she still had wheezing in her lungs. Id. Then later in January 2011, "Plaintiff requested a note from Dr. McIntyre stating that she was totally disabled because she could not yell [as a school bus driver] due to sore throat, and therefore, could not drive a school bus, and that [her] left knee prevented her from doing the cafeteria job. Id. This evidence is also reflective of credibility with respect to work history and the ALJ properly noted that Plaintiff "declined a referral to an orthopedist, and Dr. McIntyre told her to purchase and wear a knee sleeve. She reported that her anxiety and depression were stable." (A.R. 17). These comments reflect that her subjective belief for complete disability was not supported by her treating physician, and is reflective of her credibility.

Thus, the Court finds that the ALJ properly accounted for Plaintiff's work history as well as the attempts by Plaintiff related to obtaining letters to be disabled even though her treating physician recommended minor or moderate treatments to mitigate the problems so she could return to work.

### D. Objections to the Vocational Expert's Testimony

Plaintiff's object to the ALJ's step 5 analysis relative to the Vocational Expert's testimony. The ALJ may rely on vocational expert testimony provided that it is "based upon a consideration of all other evidence in the record, and is based upon up to date and relevant information." 20 C.F.R. 404.1569a. Counsel for the Plaintiff at the hearing inquired as to the data, and the expert reported that the jobs numbers were current as of May 2012. (A.R. 67-68). In further questioning, counsel confirmed with the expert that her daily role involved dealing with clients individually.

15

Id. That the number of jobs available was not relevant to the daily duties of trying to help individuals identify their strengths and help them find work. Id. That she had an understanding of jobs in the community where she worked. Id. That she did not count the number of jobs available. Id. Also, that she had no experience in calculating job numbers. (A.R. 70). Counsel made his point and was able to fully develop his argument that "[t]he number of jobs in a national or regional economy are not important when [a vocational expert is] working with a client." (A.R. 70). However, the ALJ properly limited the questioning because Plaintiff's counsel did not challenge the numbers nor occupations presented by the vocational expert and was simply trying to point out that this particular expert did not generate the material that the expert relied on in stating the job calculation numbers. (A.R. 70-71).

Hence, the ALJ's step 5 analysis had substantial evidence relating to the determination that jobs exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 21). The asserted error of failing to note the objection of Plaintiff's counsel is of no moment. Thus, this issue is without merit.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is DENIED (Doc. Nos. 14, 22), and Defendant Commissioner's Second Motion for Summary Judgment is GRANTED (Doc. No. 23).

**SO ORDERED.**

Signed: August 12, 2016

Frank D. Whitney
Chief United States District Judge